*9 OPINION.
Trammell :
The petitioner contends that during the fiscal year here involved it was affiliated with the four Texas corporations. In support of this contention the petitioner urges that it had not only complete management and direction of the business of the companies, but also cgmplete control of the policies of all the companies not only as to the framing and dictation of the policies, but also control of the stock with respect to voting for or approving its policies.
The evidence shows that 600 shares of the stock of the Mar-Tex Oil Co. were issued to Robinson in 1918. It is not clear from the record, however, what arrangement was made as to the holding of this stock after he withdrew from the Texas enterprise. The evidence shqws that for the taxable period here involved the stock still stood in his name, and that he continued to be a director of the company until January 13, 1921. Conceding for the sake of argument that he held this stock for the petitioner, this would indicate that the petitioner was the holder of three-fifths of the stock of that company, which is the same amount it had in the three other companies. The petitioner through its president, Fehsenfeld, had complete management and control of the operations of the four Texas companies and determined all questions of policy relating to them. While there were differences of opinion among the stockholders of the Texas corporations as to what was the best to be done in the operation of the companies, the stockholders always acquiesced in the measures that Fehsenfeld took and the operation of the companies was harmoniously carried on. But the question is, Did the petitioner control the voting stock which it did not own? It is the control of the stock and not control of the business and policies which is the control referred to in the statute, Ice Service Co. v. Commissioner, 30 Fed. (2d) 230. The fact that the minority stockholders acquiesced in the management of the business does not indicate that their stock was controlled within the meaning of the statute. News Publishing Co., 29 Fed. (2d) 955. The record clearly shows that the minority stockholders of the Texas corporations were not stockholders in the petitioner.
It is also urged that by having an option to purchase the stock of the minority stockholders, the petitioner thus controlled such stock. In our opinion a mere option such as existed in the instant case to purchase stock when offered for sale does not constitute *10 control of the stock. Bay State Securities Co., 3 B. T. A. 43; Goldstein Bros. Amusement Co., 3 B. T. A. 408.
From the evidence we can not find that the petitioner owned or controlled in excess of 60 per cent of the stock in each of the Texas corporations. This amount clearly does not represent substantially all of the stock. American Auto Trimming Co., 6 B. T. A. 1007; Hatzler & Buehler, Inc., 10 B. T. A. 993; Central Auto Equipment Co., 7 B. T. A. 1068. See, also, Wadhams & Co. v. United States, 67 Ct. Cls. 235, and Ice Service Co. v. Commissioner, supra.
It is further urged that the petitioner and the Texas corporations were conducted as a commercial and economic business .unit with respect to the Texas operations, which constituted the sole purpose for organizing the four Texas companies. Conceding but not deciding that this is true, there is clearly lacking that ownership or control by the petitioner or by the same interests of substantially all of the stock of the Texas corporations as required by the statute.
In view of the foregoing, we are of the opinion that the action of the respondent in determining that the petitioner and the four Texas corporations were not affiliated within the meaning of the statute during the taxable period is correct and must be sustained.
The petitioner contends that, in event it and the Texas corporations are determined not to have been affiliated, it is entitled to a deduction of $106,416.98 as an ordinary and necessary business expense, representing an amount expended by it during the taxable period in connection with the operations of the Texas corporations. The petitioner also contends that the $106,416.98 was actually lost when expended and that it should be allowed that amount as a loss sustained during the taxable year. The respondent contends that the amount expended was in payment of 60 per cent of the stock of the Texas companies and, as further amounts were expended during subsequent years, no deductible loss was sustained during the taxable period.
The fact that Fehsenfeld, acting in behalf of the petitioner, in the ’ exercise of his judgment decided to have other wells drilled and caused the petitioner to furnish the funds therefor, does not, in our opinion, serve to make such additional amounts any less payments for stock.
From the facts before us, we are of the opinion that the amount of $106,416.98 expended by the petitioner in connection with the operations of the Texas companies during the taxable period constituted a payment on the stock it had received under the contract, and therefore is not an allowable deduction for the taxable period.
The petitioner furnished additional money to the corporations during subsequent years and there is nothing to indicate that operations *11 were abandoned or that it was definitely determined during the taxable period that they would be abandoned, or that a loss had been or would be sustained. During the years here involved it is not shown that it was definitely known that the undertaking would not be successful.
The record does not show how many of the wells had been completed during iho taxable period and there is a complete absence of evidence to indicate that conditions were so different during the taxable year from what they were at the time of making the contract of December 8, 1917, as to justify the conclusion that the $106,416.98 constituted a loss sustained during the taxable year. John W. Mercer, 6 B. T. A. 564.

Judgment will be entered for the respondent.